UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MICHELE S. ADKINS, SR.,

Plaintiff,

v. CASE No. 8:06-CV-1317-T-TGW

MICHAEL J. ASTRUE,
Commissioner of Social Security,[1]

Defendant.

---

O R D E R

The plaintiff in this case seeks judicial review of the denial of his claims for Social Security disability benefits and supplemental security income payments.[2] Because the decision of the Commissioner of Social Security does not explain adequately the rejection of a treating physician's opinions, the decision will be reversed and the matter remanded for further consideration.

I.

---

[1]Michael J. Astrue has become the Commissioner of Social Security. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, he should be substituted for Jo Anne B. Barnhart as the defendant in this suit.

[2]The parties have consented in this case to the exercise of jurisdiction by a United States Magistrate Judge (Doc. 15).

The plaintiff, who was forty-five years old at the time of the administrative hearing and who has a high school education, has previously worked as a tile setter, flooring salesman, security guard, and maintenance engineer (Tr. 86, 318, 319, 321-24). He filed claims for Social Security disability benefits and supplemental security income payments, alleging that he became disabled on April 1, 1998, due to pemphigus foliaceus, a skin disorder (Tr. 82). The claims were denied initially and upon reconsideration.

The plaintiff, at his request, then received a de novo hearing before an administrative law judge. The law judge found that the plaintiff had not established the existence of a disability from April 1, 1998, to April 19, 2000, because the record does not contain medical documentation for this time period (Tr. 14). However, for the period April 20, 2000, to the date of his decision, the law judge found that the plaintiff's obesity and superficial pemphigus erythematosus were severe impairments (Tr. 17, ¶4). He concluded that these impairments restricted the plaintiff to a limited range of light work (id., ¶7). Thus, the law judge stated that the plaintiff could not be exposed to sunlight for a prolonged period of time, and that he was limited to indoor tasks with only occasional climbing, balancing, stooping, kneeling,

crouching and crawling (id.). Further, the plaintiff was to avoid concentrated exposure to extreme heat, noxious skin irritants such as gases and fumes, and could not have direct skin contact with detergents (id.). Based upon the testimony of a vocational expert, the law judge determined that these limitations did not preclude the plaintiff's return to prior work as a security guard or a retail flooring salesman (id., ¶8). Accordingly, the law judge ruled that the plaintiff was not disabled (id., ¶10). The Appeals Council let the law judge's decision stand as the final decision of the Commissioner.

II.

In order to be entitled to Social Security disability benefits and supplemental security income, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment," under the terms of the Act, is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. 423(d)(3), 1382c(a)(3)(D). The

Act provides further that a claimant is not disabled if he is capable of performing his previous work. 42 U.S.C. 423(d)(2)(A), 1382c(a)(3)(B). In this case, also, the plaintiff must show that he became disabled before his insured status expired on December 31, 2001, in order to receive disability benefits. 42 U.S.C. 423(c)(1); Demandre v. Califano, 591 F.2d 1088, 1090 (5th Cir. 1979), cert. denied, 444 U.S. 952. There is not a similar requirement with respect to the plaintiff's claim for supplemental security income payments.

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence. 42 U.S.C. 405(g). Substantial evidence is “such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.” Richardson v. Perales, 402 U.S. 389, 401 (1971), quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. Grant v. Richardson, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence,

and those inferences are not to be overturned if they are supported by substantial evidence. Celebrezze v. O'Brient, 323 F.2d 989, 990 (5th Cir. 1963).

Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to reweigh the evidence, but is limited to determining whether the record as a whole contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. However, the court, in its review, must satisfy itself that the proper legal standards were applied and legal requirements were met. Lamb v. Bowen, 847 F.2d 698, 701 (11th Cir. 1988).

III.

The plaintiff asserts that he became disabled on April 1, 1998, due to pemphigus foliaceus. The law judge rejected this claim for the period from April 1, 1998, to April 19, 2000, because there is no medical documentation substantiating such a finding (Tr. 14). That is an adequate reason for rejecting the plaintiff's claim of disability during this period, and the plaintiff does not make a cogent argument that this conclusion was erroneous. Therefore, there is no basis to overturn this finding.

On the other hand, for the period after April 19, 2000, the plaintiff presented medical evidence that he suffers from pemphigus erythematosus, a serious skin disorder. Although the law judge found that this is a severe impairment, he rejected the plaintiff's contention that it is disabling.

The plaintiff challenges this conclusion on the ground that the law judge improperly disregarded his treating physician's opinions that the condition is disabling (Doc. 16, pp. 13-17). In particular, treating dermatologist, Dr. Virginia Schekorra, opined that the plaintiff is unable to work due to pemphigus erythematosus and the side effects of medication.

As described by Dr. Schekorra, pemphigus is a skin disease where blisters form on the skin (Tr. 299). The skin feels like it is burning, then blisters form, followed by an oozing scab and skin falling off (id.). It can take weeks for the blisters to heal (Tr. 101). Pemphigus is commonly treated with the steroid Prednisone (Tr. 301).

Dr. Schekorra stated in correspondence dated September 23, 2004, that the plaintiff's pemphigus is a permanent condition, and that he will

need to take Prednisone for the remainder of his life (Tr. 100-01, 300). In this connection, Dr. Schekorra explained (Tr. 100-01):

> [The plaintiff's] condition limits him to living in a controlled environment with avoidance of any sun exposure, exposure to stress, exposure to public places and/or the public because a suppressed immune system resulting from the Prednisone treatment required to treat this skin condition. [The plaintiff] has been living on borrowed time going day to day in fear of breakouts which include blisters which form all over the body, face, hands, trunk and extremities. These blisters then ooze serum and get infected. Scabs form and the skin falls off taking approximately three weeks to heal. The frequency and severity of these breakouts increase if he goes outside of his controlled environment in the home. In order to treat his condition he must take large doses of Prednisone which cause him additional physical complications and side effects including, but not limited to, adrenal suppression, deterioration of stomach lining, breaking down of his bones, swelling, achiness, fatigue, vision problems and suppression of his immune system making him susceptible to pneumonia if exposed to germs in the public. All of these symptoms have existed prior to December 2001 and continue today.
>
> ....
>
> Since stabilizing him with the Prednisone and his very limited lifestyle, he still remains homebound with constant fatigue, pain, swelling and now vision loss. In combination of the symptoms he continues to experience, [the plaintiff] cannot be

> sent out into the public to work. Although he may have two-three days a month where he feels up to leaving the home he would be unable to maintain employment because of the breakouts he would experience and the approximately three[-]week healing process to get the blisters and scabs healed to an extent to be able to return to work.

Dr. Schekorra stated in a detailed letter dated July 28, 2005, that the plaintiff continues to have significant recurring blistering outbreaks even with medication (Tr. 299, 300). She specifically asserted that the plaintiff's condition is not controlled with Prednisone (Tr. 299). She opined that he may also be developing systemic lupus (id.).

Dr. Bernard Khaw, the plaintiff's primary care physician at the Veterans Administration Hospital ("VA"), also has opined that the plaintiff cannot work. In November 2003 and April 2004, Dr. Khaw stated in progress notes that the plaintiff "is unable to work since he has bullous skin lesion and multiple arthalgia ..." (Tr. 185, 207). On June 30, 2004, Dr. Khaw reiterated this opinion in a Medical Certification form (Tr. 293). On July 27, 2005, Dr. Khaw specified that the plaintiff "is on chronic prednisone ther[apy]. The skin disorder has limited his mobility and stamina and is unable to work, sit, stand or kneel for any leng[th] of time. He is unable to work" (Tr. 297A).

The law judge had to give substantial or considerable weight to the opinions of Drs. Schekorra and Khaw, as treating physicians, unless there was good cause for not doing so. Phillips v. Barnhart, 357 F.3d 1232, 1240 (11th Cir. 2004). Good cause exists when the treating physician's opinion is not bolstered by the evidence, the evidence supports a contrary finding, or the opinion is conclusory or inconsistent with the physician's own medical records. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997). Further, the law judge must "clearly articulate the reasons for giving less weight to the opinion of a treating physician...." Id.

The law judge gave short shrift to the treating physicians' opinions. Thus, the law judge stated only (Tr. 16):

> The claimant's condition has been under control and stable with medications, including Prednisone. There is no objective evidence of end organ damage or osteoporosis from the long use of Prednisone. There are no extensive lesions, even during flare-ups, and the condition responds to treatment, which is contrary to Dr. Schekorra's statements[,] including at Exhibit 13F. Also, Dr. Kha[w]'s statement on VAMC progress notes that the claimant is unable to work is on an issue reserved to the Judge.

Arguably, these brief statements are sufficient to discount the treating physicians' opinions that the plaintiff's skin disorder is disabling on the ground that the condition is controlled by Prednisone. In this respect, the law judge in his decision pointed to medical evidence that would permit him to conclude that the plaintiff's "condition has been under control and stable with medications, including Prednisone" (Tr. 16; see Tr. 13, 15), contrary to Dr. Schekorra's statement.[3]

However, even accepting that the law judge reasonably discounted Dr. Schekorra's opinion that the plaintiff's skin condition was disabling, and that he adequately explained that finding, that would not resolve all of Dr. Schekorra's opinions. Dr. Schekorra opined that Prednisone, which the law judge found controlled the plaintiff's skin condition, had serious side effects. Moreover, the law judge acknowledged in his decision that, "[i]n order to treat the claimant's condition he must take large doses of Prednisone which cause[s] him additional complications and side effects" (Tr. 13).

[3]Unlike Dr. Schekorra's opinions, Dr. Khaw's opinions were conclusory in nature. That is an adequate basis to reject his opinions.

The regulations specifically require the law judge to consider the side effects of medication. 20 C.F.R. 404.1529(c)(3)(*iv*), 416.929(c)(3)(*iv*). Here, the law judge merely commented that the plaintiff's long use of Prednisone has not produced objective evidence of end-organ damage or osteoporosis (Tr. 16). However, Dr. Schekorra mentions a host of other side effects. Thus, she stated that the plaintiff "must take large doses of Prednisone which cause him additional physical complications and side effects including, but not limited to, adrenal suppression, deterioration of stomach lining, breaking down of his bones, swelling, achiness, fatigue, vision problems and suppression of his immune system making him susceptible to pneumonia if exposed to germs in the public" (Tr. 100). Moreover, Dr. Schekorra indicates that, due to a suppressed immune system caused by the Prednisone, the plaintiff must live "in a controlled environment with avoidance of any sun exposure, exposure to stress, exposure to public places and/or the public" (id.; see also Tr. 104, 299-300).

The law judge did not evaluate these limitations that Dr. Schekorra opined that the plaintiff suffered due to long-term Prednisone use. He did include in his residual functional capacity a restriction against

prolonged exposure to sunlight (Tr. 17). Further, he could reasonably disregard at this point Dr. Schekorra's opinions concerning consequences that the plaintiff would suffer in the future from long-term use of Prednisone.

As indicated, however, Dr. Schekorra stated that, in her opinion, the plaintiff suffered such side effects from Prednisone as fatigue, pain, swelling, and suppression of the immune system (which could expose the plaintiff to infection upon being out in public). The law judge totally failed to address the doctor's opinions as to those matters. The law judge's comment that Prednisone had not produced objective evidence of end-organ damage or osteoporosis is certainly not a sufficient justification to permit the law judge to discount the doctor's opinion as to the plaintiff's side effects from Prednisone. Accordingly, the law judge has not shown good cause for rejecting Dr. Schekorra's opinion regarding side effects. A remand is therefore required. Schnorr v. Bowen, 816 F.2d 578, 582 (11th Cir. 1987).

The plaintiff's second contention is tied in with the first. The plaintiff argues that the vocational expert's opinion that he could return to prior work is flawed because it is based upon a hypothetical question that fails to include all of the work restrictions suggested by Dr. Schekorra (Doc. 16,

p. 17). An evaluation of the hypothetical question is premature until Dr. Schekorra's opinions are properly evaluated.

It is, therefore, upon consideration

ORDERED:

That the decision of the Commissioner is hereby REVERSED, and the matter REMANDED for further consideration. The Clerk shall enter judgment in accordance with this Order and CLOSE this case.

DONE and ORDERED at Tampa, Florida, this 24th day of August, 2007.

THOMAS G. WILSON
UNITED STATES MAGISTRATE JUDGE